IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Dewey C. Barnhill and Jane P. Barnhill, ) | |
| ) | |
| Plaintiffs, ) | C.A. No.7:05-1158-HMH |
| ) | |
| vs. ) | |
| ) | **OPINION & ORDER** |
| Bank of America, N.A. and West Asset ) | |
| Management, Inc., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Bank of America, N.A. ("Bank of America") and West Asset Management, Inc.'s ("West") (collectively "defendants") motion to dismiss Dewey C. Barnhill ("Dewey Barnhill") and Jane P. Barnhill's ("Jane Barnhill") (collectively "plaintiffs") complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. After review, the court grants the motion to dismiss in part and denies the motion in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 27, 1996, Dewey Barnhill and Jane Barnhill cosigned a loan with their son, Kevin C. Barnhill ("Kevin Barnhill"), to finance the purchase of an automobile. (Compl. ¶ 4.) Kevin Barnhill defaulted on the loan, which had been subsequently assigned to Bank of America. (Id. at ¶ 5.) Bank of America repossessed the automobile and sold it, leaving a deficiency balance on the loan of Ten Thousand Four Hundred Sixteen Dollars and Ninety-one Cents ($10,416.91). (Id. at ¶ 6.) Bank of America then brought suit against Dewey Barnhill and Kevin Barnhill for the balance due on the loan. (Id. at ¶ 7.) Dewey

1

Barnhill allegedly entered an agreement with Bank of America on January 2, 2002, in which he paid Bank of America for a final and full release of Bank of America's debt claim against him. (Id. at ¶ 8.) Nonetheless, Dewey Barnhill alleges that Bank of America notified him and Jane Barnhill six months later that it was seeking to collect on the debt, and made withdrawals of Five Hundred Eight Dollars and Eighty-eight Cents ($508.88) and Six Hundred Seventy-two Dollars and Eighty-six Cents ($672.86) from two of the plaintiffs' accounts to apply to the balance due on the loan. (Compl. ¶¶ 9-12.) The plaintiffs contend that the money was wrongly withdrawn from their accounts, as they claim that they had settled their liability on the loan. (Id. at ¶¶ 11-12.)

After Bank of America withdrew the money, the plaintiffs hired an attorney, and Bank of America replaced the money in the plaintiffs' accounts. (Id. ¶ 13.) However, in January 2005, West agents contacted the plaintiffs and informed them that the balance of the outstanding loan, approximately Eight Thousand Dollars ($8,000), had been assigned to West. (Id. ¶ 14.)

On multiple occasions, Bank of America allegedly notified Equifax that Dewey Barnhill was late on his loan payments. Dewey Barnhill claims that these disclosures were wrongful, because he previously satisfied his obligation on the loan and had no outstanding payments. (Id. ¶ 15.)

On March 16, 2005, the plaintiffs filed a complaint in the Court of Common Pleas of Cherokee County, South Carolina, alleging claims for negligence, libel, and a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. § 1692 et seq. (West 1998), against Bank of America and a claim for negligence against West. The plaintiffs seek actual

damages, statutory damages, attorneys' fees, costs, and punitive damages. The defendants removed the case to this court on April 18, 2005, arguing that the plaintiffs' FDCPA claim provided this court with federal question jurisdiction. (Notice of Removal at 2.)

On April 22, 2005, the defendants filed a motion to dismiss the plaintiffs' claims for violation of the FDCPA, libel, and part of the negligence claim (Complaint ¶ 17(e)) against Bank of America. The plaintiffs responded on May 16, 2005.

## II. Discussion of the Law

The defendants move to dismiss the complaint, arguing that the plaintiffs have failed to state a claim for which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In federal court, a plaintiff must make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is proper "only if it can be said that on the claim as pleaded the claimant can prove no set of facts that would entitle her to relief." Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995). Furthermore, the court must treat the factual allegations of the nonmoving party as true. See Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

### A. FDCPA Claim

The defendants argue that the plaintiffs' FDCPA claim must be dismissed because the FDCPA excludes "any officer or employee of a creditor while, in the name of the creditor, collect[s] debts for such creditor" from its definition of "debt collector." 15 U.S.C.A. § 1692a(6)(A) (West 1998); (Defs.' Mem. Supp. Mot. Dismiss at 2.) Because Bank of America's principal business is not debt collection, and because Bank of America is seeking

3

to collect its own debt, the defendants argue that Bank of America is not a "debt collector" for purposes of the FDCPA, and the plaintiffs cannot state a FDCPA claim against it. (Id. at 2-4.) The plaintiffs concede that the defendants are entitled to dismissal of the FDCPA claim. Therefore, the FDCPA claim is dismissed with prejudice.

### B. Common Law Claims for Negligence and Libel Against Bank of America

In the complaint, the plaintiffs allege that Bank of America, "by and through its agents, was willful, wanton, reckless, grossly negligent, negligent, and careless in . . . repeatedly sending false information on Plaintiff, Dewey C. Barnhill, to Equifax, a credit reporting agency." (Compl. ¶ 17.) Further, the plaintiffs allege that Bank of America's numerous reports and statements to Equifax were false and defamatory, and were published by Equifax to potential creditors and others seeking information about Dewey Barnhill's credit status. (Id. ¶¶ 22-28.) The plaintiffs allege that Bank of America disclosed this information "with knowledge that the [disclosures] were erroneous or with reckless disregard for their truthfulness." (Id. ¶ 23.)

In their motion to dismiss, the defendants argue that the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 et seq. (West 1998 & Supp. 2005), preempts the plaintiffs' claims for negligence and libel with respect to Bank of America's reports to the credit agencies. See 15 U.S.C. § 1681t(b)(1)(F) (West Supp. 2005); Hasvold v. First USA Bank, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001), reconsideration granted in part by 2001 WL

1762626 (E.D. Pa. June 20, 2001) (unpublished)[1]; (Defs.' Mem. Supp. Mot. Dismiss at 5.) The plaintiffs acknowledge the Jaramillo line of decisions interprets § 1681t of the FCRA to preempt state law causes of action of negligence and libel, but they argue that other courts have interpreted § 1681t to preempt only state statutory causes of action and not common law causes of action for negligence and libel. See Jeffery v. Trans Union, 273 F. Supp. 2d 725, 726-28 (E.D. Va. 2003); (Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 3.)

In analyzing the preemptive effect of § 1681t, district courts have used at least three different approaches. The first is the "total preemption" approach, upon which the defendants rely, which holds that § 1681t preempts all state laws – statutory and common law – that affect the duties of furnishers of information to credit reporting agencies. The second, which neither party addressed in its memorandum, is the "temporal approach." The temporal approach construes § 1681t as preempting all state statutory and common laws affecting the duties of furnishers of information after they have received notice that the information they are furnishing may be incorrect or has been contested by the consumer. The plaintiffs rely on the third and final "statutory approach," which interprets § 1681t to preempt only state statutory laws and have no effect on state common law tort causes of action.

The United States Court of Appeals for the Fourth Circuit has not addressed this question, nor has any other United States Court of Appeals. However, United States District Courts in other districts have applied each of the three approaches within the past year. Cf.

---

[1]The court in Jaramillo dismissed both a state statutory claim and a common law libel claim on preemption grounds. 155 F. Supp. 2d at 362. In ruling on a motion for reconsideration, the court summarily reinstated the plaintiff's libel claim. However, because the court left its dismissal of the statutory claim intact, the analysis in Jaramillo is useful.

5

Campbell v. Chase Manhattan Bank, USA, N.A., No. 02-3489, 2005 WL 1514221, at **16-17 (D.N.J. June 27, 2005) (adopting the total preemption approach); Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1143-44 (N.D. Cal. 2005) (same), with Kane v. Guaranty Residential Lending, Inc., No. 04-4847, 2005 WL 1153623, at **5-9 (E.D.N.Y. May 16, 2005) (adopting the temporal approach); Cox v. Beneficial Kansas, Inc., No. 04-4128, 2005 WL 627974, at *3 (D. Kan. Mar. 9, 2005) (same); Ryder v. Washington Mut. Bank, FA, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005) (same), and with Watson v. Trans Union Credit Bureau, No. 04-205, 2005 WL 995687, at *8 (D. Me. Apr. 28, 2005) (adopting the statutory approach); Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1376 (N.D. Ga. 2004) (same).  The court will address each approach in turn.

### A.  The Total Preemption Approach

Courts employing the total preemption approach have concluded that Congress repealed § 1681h(e) in amending § 1681t, and that § 1681t preempts all state laws which affect the duties of furnishers of information to credit reporting agencies.  See, e.g., Hasvold, 194 F. Supp. 2d at 1238-39.  The court declines to adopt this approach, however, as it fails to follow traditional principles of statutory construction and fails to account for the FCRA's legislative history.

On September 30, 1996, Congress amended the FCRA, with the amendment taking effect one year later.  Pub. L. No. 104-208 (1996) (codified as amended at 15 U.S.C.A. § 1681 et seq. (West 1998 & Supp. 2005)).  The amendment added substantially

to 15 U.S.C.A. § 1681t (West 1998 & Supp. 2005), including the following:

>  **(b) General exceptions**
>  No requirement or prohibition may be imposed under the laws of any State–
>    **(1)** with respect to any subject matter regulated under–
>
>    . . . .
>
>      **(F)** section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply–
>        **(i)** with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>        **(ii)** with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996);

15 U.S.C.A. § 1681t(b)(1)(F). At the same time, Congress amended § 1681h(e) to add to the types of state common law causes of action preempted by the FCRA. Section 1681h(e) states the following:

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, <u>or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report</u> except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e) (West Supp. 2005) (emphasis added to show addition made in 1996).

Courts following the total preemption approach suggest that Congress implicitly repealed § 1681h(e) when it amended § 1681t. However, this conclusion ignores well-established principles of statutory construction as well as the FCRA's legislative history. Thus, this approach is fatally flawed.

7

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001) (internal quotation marks omitted). Moveover, an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject of the earlier one and is clearly intended as a substitute. <u>Posadas v. Nat'l City Bank</u>, 296 U.S. 497, 503 (1936). As set forth below, neither the temporal nor statutory approach renders § 1681h(e) a nullity or concludes that Congress implicitly repealed § 1681h(e) by amending § 1681t. In addition, Congress amended both §§ 1681t and 1681h(e) in 1996, thereby precluding the conclusion that § 1681t impliedly repealed § 1681h(e). Because the total preemption approach unnecessarily renders § 1681h(e) a nullity and fails to account for the FCRA's legislative history, the court finds the total preemption approach unpersuasive.

### B. The Temporal Approach

Courts employing the temporal approach find that §§ 1681t and 1681h(e) apply under different circumstances. <u>See, e.g.</u>, <u>Kane</u>, 2005 WL 1153623, at *8. The temporal approach reconciles §§ 1681t and 1681h(e) by focusing on when the furnisher of information received notice that the information provided was inaccurate or disputed. Section 1681t provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title." 15 U.S.C.A. § 1681t(b)(1)(F). Section 1681s-2(a) imposes a duty upon furnishers to provide accurate information. Among other duties, subsection (a) prohibits a person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or

has reasonable cause to believe that the information is inaccurate." 15 U.S.C.A. § 1681s-2(a)(1)(A) (West Supp. 2005). Section 1681s-2(b) further requires that furnishers of information satisfy various investigative, review, and reporting obligations upon notice of a dispute lodged by the consumer to a credit reporting agency. See 15 U.S.C.A. § 1681s-2(b) (West Supp. 2005).

"To the extent that a furnisher of information provides inaccurate information after receiving notice of inaccuracy *from a credit reporting agency*, that conduct is regulated under 15 U.S.C. § 1681s-2 (b)." Kane, 2005 WL 1153623, at *8. When a furnisher provides inaccurate information after being notified by the consumer, the furnisher's conduct falls squarely within § 1681s-2 (a)(1)(B). See id. Finally, § 1681s-2(a)(1)(A) prohibits a furnisher from providing information when the furnisher has constructive notice that the information is inaccurate. Therefore, under the temporal approach, "once a furnisher of information has notice *from any source* and provides inaccurate information, the conduct is subject matter regulated under section 1681s-2," and any state law claim predicated on actions after the furnisher has notice is entirely preempted by § 1681t(b)(1)(F). Id. (internal quotation marks omitted). Conversely, causes of action predicated on acts which occurred before a furnisher had notice of any inaccuracies are not preempted by § 1681t(b)(1)(F), but are governed by § 1681h(e). In sum, under the temporal approach, common law tort claims may go forward only if they concern acts which occurred before the furnisher had notice of any inaccuracies or a dispute and if malice or willful intent to injure the consumer has been alleged.

Although the temporal approach appears to be a reasonable interpretation of §§ 1681t and 1681h(e), numerous issues arising from the approach's application render it

9

unpersuasive. First, although the approach complies with the canon of statutory construction which requires this court to choose an interpretation of § 1681t which does not nullify § 1681h(e), it runs afoul of another canon of construction which provides that a specific statute prevails over a general statute.

When a specific statute carves out an exception to a general statute, the "specific statute will not be controlled or nullified by [the] general one, regardless of priority of enactment." Morton v. Mancari, 417 U.S. 535, 550-51 (1974). "Section 1681t(b) is a general preemption provision, 'both by its terms and its given moniker,' which is 'General exceptions.'" Johnson, 351 F. Supp. 2d at 1375 (quoting Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1013 (S.D. Iowa 2003)). Numerous courts have construed § 1681t to be a general statute, and § 1681h(e), preempting only common law tort claims and excepting only claims alleging malice or willfulness, to be a specific statute that is not controlled by § 1681t. See, e.g., Johnson, 351 F. Supp. 2d at 1375-76; Jeffrey, 273 F. Supp. 2d at 727. The temporal approach, however, submits the specific statute – § 1681h(e) – to the control of the more general – § 1681t – by construing § 1681t to bar <u>any</u> common law tort claim concerning the actions of a furnisher of information <u>after</u> that furnisher has notice that the information may be inaccurate or that the consumer is contesting the information.

In addition to contravening a canon of statutory construction concerning specific and general statutes, applying the temporal approach also leads to a perverse result. Through § 1681h(e), Congress expressly permitted common law tort claims to remedy the most egregious wrongs – when people furnish information with malice or willful intent to injure consumers. Absent such intent, § 1681h(e) limits an aggrieved consumer to the provisions of

10

15 U.S.C.A. §§ 1681n and 1681*o* (West 1998), and preempts state law tort actions.  Under the temporal approach, a person could bring a tort action against a furnisher of information who had no notice that the information was incorrect, but would be prevented from bringing a tort action against a furnisher of information who had notice of the incorrect information and acted with the willful intent to injure the consumer.  Applying the temporal approach in this way "has the effect of giving a furnisher of information more protection from exposure to liability for acts committed after receiving notice of dispute than for acts committed before such notice."  Johnson, 351 F. Supp. 2d at 1375.

  The effect that a furnisher is more protected from common law tort suits after notice than before is particularly alarming in circumstances in which a state tort suit is the only remedy available to the consumer.  Congress set forth the civil liability for noncompliance with the FCRA in 15 U.S.C.A. §§ 1681n and 1681*o*, and the Fourth Circuit, interpreting the statute, concluded that Congress intended those sections to give consumers a private right of action to enforce certain provisions of the FCRA.  See Ausherman v. Bank of America Corp., 352 F.3d 896, 900 (4th Cir. 2003).  However, Congress expressly excluded consumer actions under §§1681n and 1681*o* for alleged violations of 15 U.S.C.A. § 1681s-2(a), such as when a consumer notifies the furnisher directly that the information the furnisher is providing is incorrect.  See  15 U.S.C.A. § 1681s-2(c) and (d) (West Supp. 2005).  Hence, applying the temporal approach in these circumstances removes any means for the consumer to seek redress.  It seems unlikely that Congress intended the FCRA, which was designed to address "unfair credit reporting methods [which] undermine the public confidence . . . essential to the continued functioning of the banking system," to be interpreted to protect furnishers of

11

information from tort suits when they act most egregiously and to remove any means of redress from consumers suffering such wrongs. See 15 U.S.C. § 1681(a) (West 1998) (stating Congress's findings). Therefore, for the reasons discussed above, the court declines to adopt the temporal approach.

### C.  The Statutory Approach

Courts adopting the statutory approach conclude that Congress intended §§ 1681t and 1681h(e) to work concurrently to preempt different state laws. The statutory approach construes § 1681t as preempting only state statutory causes of action, with § 1681h(e) preempting some state common law causes of action. See, e.g., Johnson, 351 F. Supp. 2d at 1376. Unlike the temporal approach, the timing of when a furnisher receives notice does not affect whether a consumer may bring a state common law tort action. See id. at 1374-76. There are numerous reasons why the statutory approach is the most compelling of the three.

First, canons of statutory instruction strongly support the statutory approach. Like the temporal approach, the statutory approach does not render § 1681h(e) a nullity. Moreover, unlike the temporal approach, the statutory approach complies with the canon requiring the specific statute to prevail over the more general statute. The more specific statute, § 1681h(e), which deals only with state common law causes of action, is unaffected by the more general statute, § 1681t, which is interpreted to apply only to state statutory laws. See Johnson, 351 F. Supp. 2d at 1375-76; Jeffrey, 273 F. Supp. 2d at 727-28.

Second, the plain language of § 1681t supports the conclusion that it applies only to state statutory laws. Section 1681t(a)(1)(F) specifically excepts from its application two state statutory schemes – section 54A(a) of Chapter 98 of the Massachusetts Annotated Laws, and

12

section 1785.25(a) of the California Civil Code – which deal with inaccurate or incomplete information in a credit report. See 15 U.S.C.A. § 1681t(a)(1)(F). Section 1681t(b)(1)(F) makes no mention of state common law. Additionally, other exceptions set forth in § 1681t(b) include code provisions from Vermont, Georgia, New Jersey, Colorado, Maine, and Maryland, but include no references to common law.

One explanation for the omission of any reference to common law in § 1681t(b) is that, when Congress amended § 1681t, § 1681h(e) already addressed which common law causes of action were preempted.[2] The alternative explanation for the omission – that there are no exceptions to § 1681t for common law causes of action – subjects a specific exception (that common law tort claims in which malice or willful intent to injure are not preempted) to the control of a general rule (that all state laws concerning duties of furnishers of information are preempted), and is therefore unpersuasive. See Morton, 417 U.S. at 550-51.

Third, and finally, this court notes that there is support for the statutory approach among district courts within the United States Court of Appeals for the Fourth Circuit and in two unpublished opinions by the Fourth Circuit.[3] The statutory approach was explicitly adopted by the court in Jeffrey v. Trans Union, LLC, 259 F. Supp. 2d 725, 728 (E.D. Va. 2003). Additionally, two other district courts have addressed the issue indirectly and

---

[2]This explanation is bolstered by the fact that Congress amended both § 1681t and § 1681h(e) in the same year, supporting the inference that Congress intended the two sections to work together, § 1681t addressing state statutory laws and § 1681h(e) addressing state common law tort claims.

[3]The court recognizes that, absent unusual circumstances, the citation of unpublished opinions of the Fourth Circuit is disfavored. See U.S. Ct. App. 4th Cir. Rule 36(c). However, because there is no published opinion in the Fourth Circuit on point, the court believes its reference to the above-mentioned cases is relevant and appropriate.

concluded that § 1681t did not entirely preempt § 1681h(e), and thus did not provide grounds for removal. See Swecker v. Trans Union Corp., 31 F. Supp. 2d 536, 540 (E.D. Va. 1998) (finding that "the explicit language of the FCRA makes clear that the statute does not completely preempt all state causes of action for defamation," but claims may be preempted by the FCRA "at least to the extent they do not sufficiently allege malice and willfulness"); Rule v. Ford Receivables, Inc., 36 F. Supp. 2d 335, 338-39 (S.D.W. Va. 1999) (analyzing § 1681h(e) and concluding that the FCRA did not completely preempt the plaintiffs' common law claims).

Finally, the Fourth Circuit has implied that § 1681t did not nullify § 1681h(e). In Beattie v. Nations Credit Financial Services Corp., the plaintiffs brought an action in which they alleged that the lender wrongly reported that the plaintiffs' house was in foreclosure, when it was not, thus harming the plaintiffs' credit. No. 02-1744, 2003 WL 21480586, at *1 (4th Cir. June 27, 2003) (unpublished) ("Beattie II"); see also Beattie v. Nations Credit Fin. Servs. Corp., No. 02-1744, 2003 WL 21213703, at *1 (4th Cir. May 27. 2003) (unpublished) ("Beattie I"). The plaintiffs brought numerous claims against the lender, including claims for negligence and libel, alleging that the lender wrongfully reported a foreclosure that had not occurred. Beattie II, 2003 WL 21480586, at **4-5; Beattie I, 2003 WL 21213703, at **4-5.

As a lender either knows or "has reasonable cause to believe" that a house securing its loan is under foreclosure, this claim appears to be squarely covered by § 1681s-2(a)(1)(A) and possibly preempted by § 1681t, depending on which approach is used. A tort claim based on this disclosure would be preempted by § 1681t under the total preemption approach. See Hasvold, 194 F. Supp. 2d at 1239. Such a tort claim would also be preempted under the

temporal approach, as the lender had constructive notice of the inaccuracy because it should have known that the disclosure was erroneous.  See Kane, 2005 WL 1153623, at *7.

The Fourth Circuit did not apply either of these approaches, however.  Rather, the Fourth Circuit quoted § 1681(h)(e), weighed whether the defendant had acted with malice, defined "malice" under South Carolina law, and concluded that there was no evidence that the defendant had acted with malice.  Beattie II, 2003 WL 21480586, at **4-5; Beattie I, 2003 WL 21213703, at **4-5.  Beattie I and Beattie II support the conclusion that § 1681t did not implicitly repeal § 1681h(e).  Additionally, because the temporal approach would have resulted in the common law tort claim being barred, and the Fourth Circuit addressed the merits of the tort claim, the approach taken by the Fourth Circuit lends support for the statutory approach.

### III.  CONCLUSION

The court considers the statutory approach most compelling.  As such, the defendants' motion to dismiss the plaintiffs' causes of action for libel and paragraph 17(e) of the plaintiffs' negligence claim, to the extent that the plaintiffs allege that Bank of America furnished inaccurate information with "malice or willful intent to injure" the plaintiffs, is denied.  See 15 U.S.C. § 1681h(e).  Otherwise, the plaintiffs' actions for libel and paragraph 17(e) of the negligence claim are preempted under § 1681h(e).  Finally, because the court grants the defendants' motion to dismiss the FDCPA claim, and there is no federal question remaining for purposes of jurisdiction, the court remands this case to the Court of Common Pleas of Cherokee County, South Carolina.

Therefore, it is

**ORDERED** that the defendants' motion to dismiss, Document number 7, is granted in part and denied in part. It is further

**ORDERED** that the case is remanded to the Court of Common Pleas of Cherokee County, South Carolina.

**IT IS SO ORDERED**.

                s/ Henry M. Herlong, Jr.
                United States District Judge

Greenville, South Carolina
July 28, 2005